**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| HANDS ON PREMIUM CAR WASH, LLC, | ) | |
| Debtor. | ) | CASE NO: 25-20255 |
| | ) | |
| _____ | | |
| HANDS ON PREMIUM CAR WASH, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ADVERSARY NO: 25-02013 |
| ELAINE KARAGAN, | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF**
**MOTION TO DISMISS ADVERSARY COMPLAINT**

Adversary Defendant Elaine Karagan ("**Karagan**"), by counsel, files this Reply Brief in Support of Motion to Dismiss Adversary Complaint, pursuant to Fed. R. Bankr. P. 7012(b), along with Fed. R. Civ. P. 12(b)(6) and 12(d).   For this Reply Brief, Karagan states the following:

## I.      INTRODUCTION

Debtor Hands On Premium Car Wash, LLC ("**Hands On**"), as tenant, breached a Ground Lease dated August 9, 2007, as amended on June 1, 2020, (collectively the "**Lease**") when it failed to provide its landlord Karagan a certificate of insurance and when it failed to pay Karagan monthly rent.  Karagan then exercised her contractual right to terminate the Lease on October 15, 2024.  In a misguided effort to either revive the Lease or to profit from the Lease termination, Hands On filed a nine page forty-three paragraph complaint under the fraudulent transfer statutes provided in the Bankruptcy Code and under Indiana law, but in all those forty-two paragraphs, Hands On never once makes mention of the fact that it failed to provide its landlord Karagan a certificate of insurance and the fact that it failed to pay Karagan monthly rent.

Rather than citing to any facts or law that would dispute the legality of Karagan terminating the Lease, Hands On, only provides three paragraphs in its Adversary Complaint, wherein Hands On wrongfully alleges that Karagan's termination of the Lease was "unlawful." See Adversary Complaint paragraphs 35, 36, and 37.  In accordance with Bankr. P. 7012(b) and Fed. R. Civ. P. 12(d), Karagan filed its Motion to Dismiss Adversary Complaint ("**Motion to Dismiss**"), Dock. No. 5; Memorandum of Law in Support of Motion to Dismiss Adversary Complaint ("**Memorandum**"), Dock. No. 6; and Exhibits A through and including G ("**Exhibits A to G**"), Dock. No. 6-1, which constitute materials outside the pleadings.  Karagan took serious offense with the wrongful allegation that the Lease was somehow "unlawfully" terminated, because such allegation is simply not true and because Hands on can cite to no evidence or law to support such position.

Exhibits A to G confirm that Karagan lawfully terminated the Lease contrary to the false allegations of Hands On.  Hands On had ample time to dispute the materials provided by Karagan in Exhibits A to G, but to date Hands On has provided nothing to the contrary.  Presumably, Hands On has provided nothing to counter Exhibits A to G, because there are no facts to dispute as to Karagan's position that she legally terminated Lease on October 15, 2024, after Hands On failed to provide a certificate of insurance requested by Karagan under the express terms of the Lease.  Likewise, Hands On failed to provide any evidence to contradict Karagan's second notice of termination sent on December 16, 2024, which was sent out to confirm that the Lease was also terminated due to unpaid rent and which was sent out of an abundance of caution, in the event there was an issue with the first notice of termination sent on October 15, 2024.

In this case, Karagan was within her legal right to terminate the Lease because Hands On failed to provided a certificate of insurance and failed to pay rent. The applicable law also permits this Court to enter a summary judgment in favor of Karagan because "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," which in turn allows the Court to summarily dismiss Hands On's Adversary Complaint with prejudice. Fed. R. Civ. P. 56. The law on fraudulent transfers cited below confirms that a non-collusive termination of a lease cannot give any sort of windfall to a tenant that previously defaulted under a lease and then seeks to either revive the terminated lease or obtain some sort of monetary award through any sort of fraudulent transfer claim.

## II.      STANDARD

While motions to dismiss usually have a very lenient standard in favor of the nonmoving party, which require the Court to assume the alleged facts of a complaint to be true, there are certain safeguards to assure that Defendants like Karagan are protected when a Plaintiff is flat out wrong in its factual allegations. Those protections arise under Bankr. P. 7012(b) and Fed. R. Civ. P. 12(d), which ultimately allow for this Court to look past Hands On's wrongful allegations, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

In this case, Karagan objects to Hands On's failure to provide any factual allegations to support its wrongful allegation that Karagan's termination of the Lease was somehow "unlawful." Karagan is unwilling to overlook such a serious flaw in Hands On's adversary complaint, and Karagan now seeks to dismiss the pending adversary complaint summarily.

Karagan filed her Motion to Dismiss with Exhibits A to G.  Such exhibits included a copy of the Lease, notices of default under the Lease, notices of Lease termination, and Karagan's termination of same, and an Affidavit of Peter Karagan, which further supports the factual allegations that Karagan was within her right to terminate the Lease.  Those Exhibits A to G, See Dock. No. 6-1, constituted materials outside of the pleadings.  Karagan also put the Court and the Plaintiff on notice that Karagan was pursuing summary judgment relief under Fed. R. Civ. P. 12(d), when she referenced such rule in paragraph 7 of the Motion to Dismiss and in the Standard section of the Memorandum.  Motion to Dismiss, Dock. No. 5, P. 2, ¶ 7 and Memorandum, Dock No. 6, P. 6-7.

Rather than attempting to counter any of the evidence and facts established under Exhibits A to G, Hands On simply states that it "objects to the introduction of any documents 'outside of the pleadings.'"  Plaintiff's Response to Karagan's Motion to Dismiss ("**Response**"), P. 3-4.  However, Hands On fails to provide any analysis against the express terms of Fed. R. Civ. P. 12(d), which reads, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56"  Fed. R. Civ. P. 12(d).  Instead, in its Response, Hands On cites to the case of *In re Quadrant 4 System Corp. v. Kurapati*, 2020 Bankr. LEXIS 171, 2020 WL 375591 (N.D. Ill.), but such case is void of any analysis on Fed. R. Civ. P. 12(d), presumably because the defendants failed to introduce any material beyond the pleadings, given that the District Court in the *Quadrant 4* case was more concerned on whether the complaint met the notice pleading standards under Fed. R. Civ. P. 8 and the heightened pleading standards under Fed. R. Civ. P. 9(b), without any mention of any materials outside of the pleadings in that case.  Hands On's efforts to somehow brush Exhibits A to G under the rug are contrary to (1) the

express terms of Fed. R. Civ. P. 12(d) and (2) the fact that Karagan placed Hands On on notice that it sought relief under Fed. R. Civ. P. 12(d) and 56 in the Motion to Dismiss and in the Memorandum.

The problem with Hands On's Response is that it can provide no evidence countering Karagan's contention that she lawfully exercised her right to terminate the Lease because Hands On failed to provide a certificate of insurance and failed to pay rent. No matter how hard Hands On may try to further delay these proceedings, Karagan's position is that there is no evidence to show that Hands On ever provided a certificate of insurance and ever cured its rental payment defaults. In other words, there is no evidence to support Hands On's wrongful allegation that Karagan "unlawfully" terminated the Lease.

Page 6, Section 13 of the Lease requires Hands On to provide Karagan with a copy of the certificate of insurance within 30 days of Karagan requesting same. See Memorandum Exhibit A, P. 6. In Memorandum Exhibit B, the Notice of Default sent by Karagan to Hands On, Karagan requested a copy of the certificate of insurance. Similarly, Section 7(b), as amended by the First Amendment to the Lease required Hands On to make monthly rent payments on the fifteenth day of each month. See Memorandum Exhibit A, P. 2 of Lease, and P.1, ¶ 3 of the First Amendment to Ground Lease, also included in Memorandum Exhibit A. In Memorandum Exhibit C, the Second Notice of Default sent by Karagan to Hands On, Karagan put Hands On on notice that it was delinquent on its rental payments. The first and second notices of termination contained in Memorandum Exhibits E and F were then sent out by Karagan to notify Hands On that she had exercised her right to terminate the Lease under Section 19(b) of the Lease. Hands On merely makes an untrue allegation that Karagan "unlawfully" terminated the Lease in the Complaint, but Hands On has failed to provide any materials to contradict the facts

established by Exhibits A to G. Despite being put on notice by Karagan that she was seeking

relief Fed. R. Civ. P. 12(d) and 56, Hands On merely ignores the applicable law, and without any

factual or legal basis for same, Hands On seeks to merely brush Exhibits A to G under the rug, as

if they did not exist. Karagan respectfully requests that this Court ignore Hand On's request to

brush Exhibits A to G under the rug, because such exhibits should be considered under the Fed.

R. Civ. P. 12(d) and 56. Because Karagan's lawful termination of the Lease completely

undermines any attempt by Hands On to either revive the Lease or obtain any damages from

Karagan's lawful termination of the Lease, Karagan would also request that the Motion to

Dismiss be treated as a summary judgment because there is no genuine dispute as to any material

fact relating to Karagan's lawful termination of the Lease on October 15, 2024, and because

Karagan is entitled to judgment as a matter of law given the law preventing a non-collusive

termination of the Lease to be treated as a fraudulent transfer.

## III. ARGUMENT

### A. Non-collusive terminations of leases are not fraudulent transfers, as confirmed by *In re: Haines* and the other cases cited by Karagan.

In its Response, Hands On first starts with an analysis on the broad definition of a

transfer under 11 U.S.C. § 101(54) and how certain lease terminations can be considered

transfers under such definition. Karagan does not dispute the case law established by certain

cases wherein collusive or some other sort of questionable lease terminations can constitute a

transfer under 11 U.S.C. § 101(54). However, based on the case law cited by Karagan in this

case with respect to Karagan's Motion to Dismiss and in the underlying bankruptcy with respect

to Karagan's pending motion for lift of stay, or in the alternative, abandonment, Karagan

disputes Hands On's efforts to apply any sort of fraudulent transfer claim, to the facts presently

before the Court, because Karagan lawfully exercised her right to terminate the Lease.

Even if Hands On's allegations regarding the valuable improvements it made to the property and the significant offers it had to sell its business are taken to be true under the liberal pleading standards for a motion to dismiss, such improvements and offers do not excuse Hands On's defaults under the Lease with respect to its failure to provide a certificate of insurance and its failure to pay rent.   Moreover, Hands On can provide no evidence to counter Karagan's Exhibits A to G, which show that Karagan was within her right to terminate the Lease.   In essence, the allegations in Hands On's complaint amount to some sort of misguided assertion that Karagan did not play ball with Hands On when Hands On sought to solicit certain offers to sell its business to third parties, but Hands On can cite to no facts or law that required Karagan to overlook Hand On's breaches under the Lease and Hands On can cite to no facts or law that required Karagan to facilitate any efforts by Hands On to work out some sort of sale of its business when Hands On was in default under the Lease.

Hands On's Response correctly notes that Karagan relies on the case of *In re: Haines*, 178 B.R. 471 (Bankr. W.D. Mo. 1995) to support its position that a non-collusive termination of a lease does not constate a fraudulent transfer actionable under the Bankruptcy Code when 11 U.S.C. §548 is read in conjunction with 11 U.S.C. §365.   In its Response, Hands On seeks to distinguish the *Haines* case from the present situation, mainly by arguing that the lease in *Haines* had expired through its own terms and that the landlord in that case had already obtained a pre-petition state court order of immediate possession.   However, Karagan has multiple responses to Hands On's misguided efforts to distinguish the *Haines* case from the facts in this case.

Karagan fails to see how the state court prejudgment order of possession in the *Haines* case is relevant to this case, because Hands On has fails to state any factual or legal basis that would allow for Hands On to undo the effect of Karagan's October 15, 2024, termination of the

Lease.  Perhaps, if the facts of this case occurred in a state like New Jersey, where a judgment for possession was a prerequisite for the termination of a commercial lease, things would be different.  See *In re Pazzo Pazzo, Inc.*, 593 B.R. 419, 425 (Bankr. D.N.J. 2018) ("But the Court, analyzing N.J.S.A. 2A:18-53 and 2A:18-55 referred to above, as well as leading cases from New Jersey state courts, ruled that the point of termination for commercial leases is the entry of judgment for possession.").  While other states may allow for a commercial lease in default to be effectively reinstated prior to a formal order of immediate possession or lease termination, Hands On fails to cite to any fact or Indiana law, which would allow for Hands On to reinstate the Lease and regain lawful possession of the leased premises in this case.

Hands On also fails to cite to any law that would distinguish a lease being terminated because the lease term expired as was the case in *Haines*, as opposed to the lease being terminated after the tenant defaulted under the lease.  In its Response, Hands On attempts to make some sort of distinction between a lease terminated by the term of the lease verses a lease terminated under some other default provision, by citing the District Court of New Jersey case of *In re Pazzo Pazzo, Inc.*, 2021 WL 2493487 (Bankr. D.N.J. 2018), but Hands On reliance on such distinction is undercut by the distinct New Jersey law cited above that requires a judicial order of possession to terminate a New Jersey commercial lease.  Moreover, the block quote on page 6 of the Response merely provides that there "might" be a difference between a termination for lease payments and expiration of the lease term.  However, Hands On provides no cogent analysis on how such potential difference plays out in this case involving a lease termination governed by Indiana law.

Furthermore, while *Haines* may be the lead case cited by Karagan to support her position, it is not the only case that supports Karagan's position.  See also *In re 421 Willow Corporation*

*t/a The Electric Factory*, 2003 WL 22318022, 6 (E.D. Penn. 2003) ("Indeed, the only cases in this Circuit squarely addressing the interplay between the Bankruptcy Code's avoidance powers in Sections 547 and 548 and a debtor in possession's restriction under Section 365(c)(3) have demonstrated that a prepetition termination of a nonresidential lease cannot be avoided by the more general provisions of Sections 547 and 548.").  In the *421 Willow Corporation* case, the lease was terminated early due to an assignment of the lease that was not approved by the landlord.  The *421 Willow Corporation* case undermines Hands On's efforts to distinguish a lease termination from the expiration of the lease term, as opposed to a lease termination from some other lease default.  Moreover, while the lease in *421 Willow Corporation* may have been terminated through a state court decision that found the lease to be terminated, Karagan is still at a loss to understand what facts or law can be cited by Hands On to reinstate the Lease at hand, under the applicable terms and provisions in the Lease and the applicable Indiana law on commercial leases.

In support of the Motion to Dismiss, Karagan also cited to *In re Durso Supermarkets, Inc.*, 193 B.R. 682 (Bankr. S.D.N.Y. 1996) ("Therefore, although I find that the termination of the lease between DSI and Mrs. D'Urso fell within the Section 101(54) definition of 'transfer,' the transfer, itself, was not a fraudulent conveyance.").  *In re Durso Supermarkets, Inc* involved a lease being terminated on account of a cross-default provision in the lease, and not the lease term expiring.  *In re Durso Supermarkets, Inc.*, the court also wrote,

> The lease here was a defaulted, above market lease. It had no value. For purposes of determining "reasonably equivalent value" under Section 548, a bankruptcy court must take the debtor's property interest as it finds it.... *BFP v. Resolution Trust Co.*, 1757 at ——, 114 S. Ct. at 1762. DSI could not transfer what it did not have. *Matter of Besing*, 981 F.2d 1488 (5th Cir.), cert. denied, 510 U.S. 821, 114 S. Ct. 79, 126 L.Ed.2d 47 (1993). Therefore, DSI did not receive less than a reasonably equivalent value.

In the present case, the Lease was properly terminated by Karagan, and as confirmed by the opinion in *Durso Supermarkets* a terminated lease has no value, given a tenant's inability to reinstate a terminated lease that was lawfully terminated under the terms of such lease.

Karagan's Memorandum also cited to the case of *In re 130/40 Essex Street Development Corp.*, 2008 WL 4845639, 6 (Bankr. S.D.N.Y.) ("The Debtor cannot recover damages under a fraudulent conveyance theory because the Lease was validly terminated pre-petition under non-bankruptcy law. . . . This Court views Code § 365(c)(3), which expressly addresses the effect of a pre-petition termination of a non-residential lease, as the more specific section of the Code. It must be given effect to the extent it conflicts with the more general provisions of Code § 548.") *In re 130/40 Essex Street Development Corp.* also involved a termination of the lease due to tenant's failure to timely pay rent required under the lease in that case. *Id*. at 2.

In support of its position, Hands On also cites to various cases that have applied the fraudulent transfer statutes under the Bankruptcy Code to terminations of leases, but as noted in Karagan's prior filings in this case and in the underlying bankruptcy, such cases involve some sort of collusive or other questionable element to the lease termination that allowed for the courts in those cases to apply the fraudulent transfer statutes.  For example, *Great Lakes Quick Lube L.P.*, 816 F.3d 482 (7th Cir. 2016) may be a case supporting Hands On's position that fraudulent transfer claims arise from a termination of a lease, but a reading of the *Great Lakes Quick Lube L.P.* opinion reveals the collusive nature of the lease termination in such case, because in that case the debtor Great Lakes negotiated with its landlord for the termination of the two leases at issue 52 days before the petition date.  *Great Lakes Quick Lube L.P.*, 816 F.3d 482, 483. Therefore, the collusion in a lease termination, which creates an exception to the general rule, as noted in *Haines*, applied to the fact situation of *Great Lakes Quick Lube L.P.*.  Applying a

fraudulent transfer claim may make sense with the tenant and landlord agree to terminate the lease voluntarily, but as *Haines* notes, such analysis does not make sense when the lease is terminated in accordance with the terms and provisions of the lease.

Similar distinctions can be made with the other cases cited by Hands On as follows:

(1)  *In re Queen City Grain, Inc.*, 51 B.R. 722 (Bankr. S.R. OH 1985) – Trustee sought to avoid lease termination of lease between related entities, as noted by the court in *Haines*, 178 B.R. 471, 476.

(2) *In re Paulson*, 623 B.R. 747, 749 (N.D. Ill. 2020) – Such case merely recites to certain cases finding that lease terminations can be considered fraudulent transfers, with no in depth analysis of same, because such case involved a transfer of a jointly owned residence into a trust.

(3) *In re White*, 559 B.R. 787, 799-800, (Bankr. N. D. Ga. 2016) – While this case may have involved the termination of a lease, unlike in *Haines*, "[h]ere, the termination of the Lease Agreement was voluntary and occurred with the consent of all the parties." *Id*.;

(4) *In re Thomson*, 186 B.R. 301, 304 and 306 (Bankr. N.D. Ga. 1995) – Case deals with prepetition termination of plaintiff's franchise agreement and sublease in connection with plaintiff's operation, and the "dispossession occurred pursuant to an agreed consent order, which the Plaintiffs never contested." *Id*.

(5) *In re EBC I, Inc.* 356 B.R. 631, 634 (Bankr. D. Del. 2006) – Case did not involve termination of lease, but rather the termination of a contract for online advertisements.

(6) *In re Edward Harvey Co.*, 68 B.R. 851, 853 (Bankr. D. Mass 1987) – Trustee seeks to avoid the termination of a lease pursuant to a settlement agreement entered into by debtor and its landlord.

(7) *In re Fashion World, Inc.*, 44 B.R. 754 (Bankr. D. Mass. 1984) – Case makes no mention of fraudulent transfers being limited to 11 U.S.C. § 365(c), probably due to the fact that 11 U.S.C. § 365(c) was enacted in 1984, the same year as the opinion in *Fashion World*.

(8) *In re: Indri*, 126 B.R. 443 (Bankr. N.J. 1991) – Case dealt with a leasehold relating to "a residence and three hundred forty seven acres of farmland." *Id*. at 444. Such leasehold did not relate to a commercial lease; therefore, there is no discussion of 11 U.S.C. § 365(c) limiting a debtor's ability to revive a commercial lease terminated prior to the petition date.

Despite Hands On's efforts to distinguish the *Haines* case from the facts presently before the Court, such distinctions are flawed, while Hands On also fails to make any mention of what is wrong with the other cases that Karagan relied in its Memorandum. Those other cases included *In re 421 Willow Corporation t/a The Electric Factory*, 2003 WL 22318022, 6 (E.D. Penn. 2003); *In Re. Pazzo Pazzo, Inc.*, 2019 WL 1858845, 3 (Bankr. D. N.J. 2019); *In re Durso Supermarkets, Inc.*, 193 B.R. 682 (Bankr. S.D.N.Y. 1996); and *In re 130/40 Essex Street Development Corp.*, 2008 WL 4845639, 6 (Bankr. S.D.N.Y.). In the meantime, Hands On cites to a number of other cases, which as noted above either included some sort of collusive termination of the Lease or some other type of transfer that was not on par with the Lease termination presently before this court. Therefore, as a matter of law, Karagan respectfully

requests that this court conclude that no fraudulent transfer claim can be applied to this case in light of Karagan's lawful termination of the Lease.

**B. Despite Hands On's efforts to argue that ground leases are not "true leases" subject to 11 U.S.C. § 365, a review of the Lease confirms that the Lease is not on par with the ground leases at issue in the cases cited by Hands On.**

Hands On also cites to two cases that involved certain types of ground leases, which were found to not be "true" leases, but the facts in those cases significantly differ from the facts in this case. For example, Hands on cites to the case of case of *International Trade Administration v. Rensselaer Polytechnic Institute*, 936 F.2d 744 (2nd Cir. 1986), wherein the lease was a ground lease for 99 years with rent to total $97,830 for the entire term to be paid in three installments during the first three years of the lease. *Id.* at 746. "In this case, the lengthy term is combined with the unusual pre-paid nature of the agreement . . .. * * * [T]he tenant's obligation to pay basic rent had also ceased." *Id*. at 750. In *International Trade Administration*, the landlord had already received all the financial benefits of the lease; therefore, the court failed to find a lease subject to 11 U.S.C. § 365. *Id*. at 750.

A similar analysis can also be applied to Hands On's citation to *In re Sears Holdings Corp.*, 2024 U.S. App. LEXIS 31791, 2024 WL 5113165 (2nd Cir. 2024), where "Sears prepaid its rent for the first thirty years of the lease term, and owed MOAC just $10 in annual rent thereafter," which in turn led the Second Circuit to conclude that the ground lease at issue in that case was not a "true" lease governed under 11 U.S.C. § 365. *Id.* at 3-4. When the rental payments are front loaded and when a ground lease is used to disguise some sort of initial financing arrangement between the landlord and the tenant, then perhaps the cases of *International Trade Administration* and *In re Sears Holdings Corp.* may be applicable, but the rental payment section in 7(b) of the Lease requiring significant monthly payments through the

term of the Lease, combined with the lack of any evidence, let alone any allegations from Hands

On, that show or allege Karagan paid for any improvements to the property subject to the Lease

all confirm that Hands On's arguments must fail.   Hands On simply seeks to make some

unfounded and overly broad assertion that ground leases are not subject to 11 U.S.C. § 365, but a

reading of the cases cited by Hands On does not support such overly broad assertion.

It should also be noted that the case of *Haines*, 178 B.R. 471, (Bankr. W.D. Mo. 1995),

used to support Karagan's position that 11 U.S.C. § 365 limits a tenants ability to revive a lease

under any fraudulent transfer claims, also involved a ground lease similar to the Lease at issue in

this case.  "On November 6, 1991, debtor and two other parties entered into a ground lease with

the Dixon Trust, so they could build and operate a restaurant . . .. The ground lease provided that

upon expiration of the lease, whether at the end of the term or after default, improvements would

become the property of the Dixon Trust."  *Id*. at 473.   Therefore, while there may be some

peculiar ground leases that have *de minimis* rental amounts or some other peculiar lease

provisions, the Lease at issue presently before the Court is not such a peculiar lease that would

take it out of the realm of 11 U.S.C. 365.  Any arguments by debtor to challenge the "true" lease

nature of the Lease in this case must fail.

**C. Hands On's Response failed to address the numerous flaws raised by Karagan in her Memorandum with respect to Hands On's state fraudulent transfer claim, which is now limited to a claim of actual fraud involving actual intent to hinder, delay, or defraud under I.C. § 32-18-2-14(a)(1).**

In pages 13 to 14 of the Response, Hands On concedes that I.C. § 32-18-2-18(e)(1),

provides, "A transfer is not voidable under section 14(a)(2) or section 15 of this chapter if the

transfer results from: (1) termination of a lease upon default by the debtor when the termination

is permitted by the lease and applicable law . . .."  Because Karagan terminated Hand On's lease

interest in the Premises pursuant to the terms and provisions of the Lease as explained above,

and because I.C. § 32-18-2-18(e)(1) prevents lease terminations to be subjected to fraudulent transfer claims under I.C. § 32-18-2-14(a)(2) and I.C. § 32-18-2-15, Hands On may only proceed at this time under I.C. § 32-18-2-14(a)(1).

In light of Hands On concession, the Court must now rule on whether Hands On may proceed under I.C. § 32-18-2-14(a)(1), which provides that "A transfer made or an obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor . . .." I.C. § 32-18-2-14(a)(1).  However, even if the facts alleged in Hands On's complaint are presumed to be true, nothing in the Adversary Complaint can be read to show any actual intent to hinder, delay, or defraud any creditor of the debtor on the part of the debtor.

A reading of I.C. § 32-18-2-14(a)(1), provides that for a transfer to be voided under this section "the debtor [must have] made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor . . .."  In reading the Adversary Complaint, the Adversary Complaint is void of any allegation that shows Hands On made the transfer with actual intent to hinder, delay, or defraud any creditor.  The only paragraph in the Adversary Complaint dealing with any allegations of hindering, delaying, or defrauding any creditor of the debtor, can be found in paragraph 36, which reads, "The unlawful and fraudulent termination was made with actual intent to hinder, delay, or defraud the creditors of Debtors and to take Debtor's Property."  Adversary Complaint, Paragraph 36.

However, contrary to the broad allegations in Paragraph 36 of the Adversary Complaint, no allegations in the Adversary Complaint can support any sort of effort to hinder, delay, or defraud on the part of Hands On, because the Adversary Complaint is void of any allegation of

intent to hinder, delay, or defraud on the part of Hands On. In fact, as the evidence shows in the Affidavit attached to the Memorandum and the documents attached thereto, the termination of the Lease was simply Karagan exercising her contractual rights to declare the lease in default and to terminate the Lease in accordance with the terms and provisions of the Lease, as permitted under Indiana law. Based on the factual allegations of the Adversary Complaint, it appears that the debtor is trying to assert that Karagan attempted to hinder, delay, or defraud the debtor's creditors by somehow trying to get Hands On off the Premises and then do some sort of new lease with Duke of Oil. Even if we assume such facts to be true, such facts fail to allege any wrongdoing on the part of Karagan, let alone any wrongdoing on the part of Hands On.

In essence, Hands On's adversary complaint seems to imply that Karagan somehow derailed Hands On's efforts to sell it's business, when it terminated the Lease. However, such an implication is irrelevant even if we were to assume the allegations of Hands On to be true. First of all, Hands On cannot overcome the fact that Hands On defaulted under the Lease and failed to provide an insurance certificate and failed to pay rent due and owing under the Lease. Even if Hands On sought to sell its business to a third party, Hands On can cite to no provision in the Lease or under any Indiana Law that required Karagan to somehow overlook and forbear her right to terminate the Lease. Moreover, Hands On can cite to no provision in the Lease or under Indiana Law that required Karagan to provide any assistance to Hands On in facilitating any sale of the business. Furthermore, the specific allegations of Hands On undermine any attempts by Hands On to pin the failure of Hands On sale of its business onto Karagan. In fact, the Adversary Complaint states that the Duke of Oil advised "that certain aspects of the contract were not acceptable, namely that Gentle Touch was to be a party." Adversary Complaint, ¶ 22. Even if Adversary Complaint, ¶ 23, is also assumed to be true, wherein it is alleged by Hands On that

Duke of Oil's counsel suggested that Karagan declare Hands On in default under the Lease and just deal with Duke of Oil Directly, Karagan fails to see any basis for actual fraud if Hands On was truly in default under the Lease and if Karagan had the legal right to terminate the Lease. Hands On can cite to no fact or law that would require Karagan to forbear its right to terminate the Lease.

The same analysis can also be applied to the remaining paragraphs 24 to 32 of the Adversary Complaint, because even if Hands On had offers to sell its business; the complaint is void of any basis to show how a lawful termination of the Lease arising from Hands On's own defaults under the Lease can create any sort of "actual intent to hinder, delay, or defraud any creditor of the debtor." Any acceptance of Hands On's arguments would then create an absurd result where landlords could be forced to forbear their rights under a lease and under Indiana law, simply because a tenant in default has an offer to sell its rights under the lease, even though the tenant is in default and the leasehold interest can be terminated on account of such default.

Furthermore, the Response of Hands On fails to address Karagan's arguments in the Memorandum that the Indiana fraudulent transfer statutes only consider the intent of the transferor Hands On, and not the intent of the transferee Karagan. Although Karagan is unable to find any direct citation in Indiana on this point, an opinion interpreting a similar provision under the Uniform Voidable Transactions Act, as adopted by Pennsylvania, confirms that the relevant section on intent to hinder, delay, or defraud "considers only the debtor's intent in making the transfer, not [the] transferee's intent, which is irrelevant." *Chestnut Street Consolidated, LLC v. Dawara*, 619 F. Supp. 3d 489, 505-506 (E.D. Penn. 2022). Moreover, the facts provided by Karagan further confirm that Hands On was not involved in the decision to terminate the lease, because Karagan unilaterally exercised her rights to declare a breach under

the Lease and to terminate the Lease.  Therefore, Hands On had no opportunity to hinder, delay, or defraud any creditors because it had no say in Karagan's election to terminate the Lease.

Hands On also fails to address Karagan's prior arguments rooted in I.C. § 32-18-2-20, which provides, "Unless superseded by this chapter, the principles of law and equity, including the law merchant and the law relating to principal and agent, equitable subordination, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement this chapter."  In this case, Hands On was a tenant who breached the Lease, and whose breaches then resulted in the termination of the Lease.  Moreover, that same tenant can point to no wrongdoing on the part of the landlord in her efforts to declare the Lease in default and to terminate the Lease.  Now that the tenant has breached the Lease, the tenant is trying to use the Uniform Voidable Transactions Act to undo the termination of the Lease that was done in accordance with the Lease previously agreed to by the Tenant.  In this instance, the equitable principal of unclean hands should prevent Hands On from now seeking to undo a lease termination caused by Hands On's own defaults under the Lease.  Therefore, I.C. § 32-18-2-20 should prevent Hands On from prevailing in any action presently before the Court when it comes to this Court with unclean hands.

## CONCLUSION

For all of the foregoing reasons, this Court should enter a summary judgment riling finding that there are no genuine issues of material fact in dispute because Karagan was within her right to terminate the Lease after Hands On breached the Lease.  The applicable law confirms that a fraudulent transfer claim cannot be asserted for the reasons stated above.  Therefore, there is no basis to allow for any amended complaint to be filed, because the undisputed facts and applicable law confirm the facts in this case cannot be realleged to support any claim for relief in

this case, and because Karagan is entitled to a summary judgment when there are no disputed material facts and the applicable law confirms that Hands On's claims must fail as a matter of law.

ADVERSARY DEFENDANT ELAINE
KARAGAN, by counsel,
**KORANSKY, BOUWER & PORACKY, P.C.**
BY: */s/* James M. Yannakopoulos
James M. Yannakopoulos (#25164-45)
425 Joliet St. Ste. 425
Dyer, IN 46311
Telephone: (219) 865-6700
Facsimile:  (219) 865-5839
E-mail: jyannako@kblegal.net

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which sent notification of such filing to all counsel and parties with copies being sent via first class mail postage prepaid for those parties who do not receive email notices according to the CM/ECF System.

Via CM/ECF email to:

Daniel L. Freeland - dlf9601@aol.com

By:     */s/ James M. Yannakopoulos*
James M. Yannakopoulos (#25164-45)